Good morning, Your Honors. May it please the Court, Brian Hostad for the United States. I'd like to reserve four or five minutes on rebuttal, and I'll monitor my time myself. In this case, the district court erred in dismissing the 1326 indictment on the grounds that the defendant's prior deportation was invalid. The government believes that the district court's errors sprung from two of its rulings. The first is the district court was mistaken when it found that the defendant's placement in administrative removal violated due process and accordingly was fundamentally unfair within the meaning of 1326. The district court's analysis on this matter was entirely a matter of statutory interpretation of 1228B and the related statutes. So this Court will review its analysis de novo. With the Court's permission, I'd like to review, at least very briefly, the evolution of these provisions, because I think it sheds a lot of light on both how the district court reached its ruling and why the government believes the district court's reasoning was incorrect. Well, if the statutory provision or provisions are not ambiguous, then it really doesn't matter how or what torturous path Congress followed to get there, does it? Well, the government believes that the torturous path that Congress reached to get here is relevant insofar as it sheds light on why the district court's holding, even if the language is plain, is nevertheless absurd, or as the district court has said, whether the consequences are at variance with the policy of the enactment as a whole. So, I mean, it does enter in slightly into the Court's analysis of whether or not the ultimate result reached by the district court is absurd. And that can, in some instances, trump the plain language. But the easiest entry point is to decide if the language is ambiguous. That is correct. If it is ambiguous, then you can forget that part and decide what do we do with the ambiguous language. That's correct. And in that situation, probably the regulation wins, wouldn't it? Yes. Yes. I mean, if there's ambiguity, there's two consequences. First, you can look into the legislative intent and for the – for, you know, how it supports what the government is urging the reading of this statute is. And you have Section 238.1. And in this context, it would be entitled to Chevron deference as a gap filler for this ambiguity. Well, what's – without going – because we've read the history, and it is torturous when you get EDBA and ERIRA 1 and 2 and all this sort of thing, and you get pretty well bound up with your tongue wrapped around your eye teeth. But what's your best argument that the statute, as it turned out to be written, is ambiguous? The best argument, Your Honor, is that – it's somewhat twofold, but the best way to place it is that 1228B1 contains the language both prior to 1996 and after 1996 that refers to defendants' determination of deportability under 1227A2A3. And after that, it contains a parenthetical that further specifies relating to the conviction of an aggravated felony. What Congress did in 1996 was, among other things, was reenact 1228C, this presumption of deportability, that used to be part of 1228 until 1994, and they reenacted it. That provision states that the conviction of an aggravated felony means that someone is conclusively presumed to be deportable. It's important to keep in mind that when a person – when an alien is deported, there are two steps to the deportation proceeding. There's the first step where there's the determination of whether they're inadmissible or deportable. And then there's the step that, assuming that if they are, whether or not they're entitled to any sort of relief thereafter, any sort of equitable relief. And the district court – and the presumption of deportability does not go to the second of these, whether – the second step as to whether or not the person is eligible for discretionary relief. They can be presumed deportable. That takes care of just the first step. So the fact that they may still be able to apply for discretionary relief doesn't affect the presumption. What the presumption does is it says if you've committed an aggravated felony, you're presumed to be deportable. That language links to the language in 1228b1 that says, you know, you're determining the deportability under 1227. If you've committed an aggravated felony, you're presumed to be deportable, that pretty much ends the deportability inquiry under 1227 because of the way the language locks together. This conclusion is reinforced by the fact that this parenthetical was ostensibly not meant to be superfluous, that Congress meant that parenthetical to be limiting rather than misdescriptive. So those two facts together, those two aspects of what happened in 1996, create ambiguity. That's probably the strongest argument as to why there's ambiguity. A secondary argument is that 1228b2 is the provision that contains most of the limitations on the – Can I stop you just for a second there because you hit a nerve that I was concerned myself with. As I remember the district court's decision, she wandered back into 1227. These subtitles are so confusing. 1227, probably a H or a triple I aggravated felony. Any alien who's convicted of an aggravated felony at any time after admission is deportable. So what you're saying is we don't have to go back that deep and run into that admission word because deportability has already been determined by 1228c, an alien convicted of an aggravated felony shall be conclusively presumed to be deportable for the United States. That's correct. And so then we look at the ambiguity caused by the parens that defines 1227 in 1228. Right. And the ambiguity. I mean, the government does not dispute that you can piece together the statutes in which the district court did. No, but she reached all the way back. By a triple I. Yeah. And that ability to reach all the way back, you know, it leads to a result that is irreconcilable with the reading that the government is urging. And these two readings are ostensibly in conflict one another. And both those provisions seems like the presumption of deportability and the other that talks about after admission are sort of in conflict with each other. And that's where I guess the ambiguity comes when you read 1228. That's correct, Your Honor. That's the government's position. That's your position. Yes, it is. The government also, you know, the district court placed great weight on the fact that there was a difference in Congress's language between 1228b1 and 1221a because 1221a1 refers to, you know, conviction of or commission of an aggravated felony under these particular sections. And it uses more particular language. And the 1228b1 uses this deportability language. As the government pointed out in its brief, placing a great amount of significance on this language is misleading because at the time that this 1228b's predecessor was enacted and this language was used, it reached the same group of people because at that time it referred to 1227. 1227 referred to commission of an aggravated felony after entry, and at that time entry referred to both legal and illegal entry. So the government does not believe you can place much weight on that difference in language because at the time that it was enacted, it was a difference without any substantive effect. So for that reason, the government does believe that the statute is ambiguous and that the district court should have either deferred to the INS's regulations or should have looked to the legislative history. And in this case, the legislative history very clearly indicates in the government's view that Congress did not intend to, in this particular enactment, carve out and categorically exempt illegal aliens from coverage under 1228b. The reasons for this are fairly straightforward. There does not appear to be any dispute that between 1994, when 1228 was enacted, and 1996, when the district court found that it was changed, that it did in fact reach illegal aliens who had been convicted of an aggravated felony and who were not otherwise eligible for relief. As to that category of illegal aliens, they were properly placed in administrative removal. There's also no question that the district court found that the statutory amendment that took them out of the reach of administrative removal was not an amendment to 1228b itself, but part of the global search and replace of the term admission for entry that occurred all throughout the statute and the change 1227, which therefore had this corresponding effect in the district court's view on 1228b-1. I don't understand the global search and replace argument. I mean, if they took out the language and put it in, put in other language, if that's what they did, then that's what they did. That is what they did. The government's point in … I mean, and then it's their job to undo it if they want to. Well, the government's point in that is simply to, as part of its argument, to explain why at least when Congress was, you know, according to the district court, changing 1228b, there was at least, that was, it was not a direct change to 1228b, that it was a change to other statutes. And that, then that change, that part of that search and replace was designed to make it easier to deport illegal aliens, not more difficult. And that feeds into the government's argument that Congress is unlikely to create such a substantive change in policy that's at odds with the expressed policy of AEDPA and ARERA, and to do so in such an obscure way. And that's why the government was citing the Bahi case to explain that in situations like this in the past, this Court has not found that Congress has made substantive changes in such an ambiguous way. But you're right. I mean, Congress did, in fact, ostensibly intend to do the global search and replace that it did. And that's why the government noted in its brief that it doesn't necessarily matter whether or not 1228a2a3 is a substantive basis for removal. Because 1228b, that procedure applies if you are, you know, an illegal alien who's been convicted of an aggravated felony. This Court doesn't need to decide whether or not the substantive basis for deportation that was directly affected by this global search and replace, in fact, allows for deportation still within that provision, or whether or not, you know, you don't need to decide that issue to decide whether or not administrative removal is appropriate if you've been convicted of an aggravated felony. The government does not believe that Taniguchi, in this case, under the — Taniguchi justifies the district court's result. That is because Taniguchi involved an amendment to 212H that was, in fact, a step toward effectuating Congress's policy goal of making it — of hastening the deportation of criminal aliens. And this case involves a step backwards. In Taniguchi, for the first time, lawful permanent residents who were aggravated felonies — felons could not receive discretionary relief, and that hastened their removal. And in this case, there was a class of illegal aliens who were not eligible for relief and had committed aggravated felonies, who were previously subject to administrative deportation, and now they no longer are. And that rule, this statutory amendment that the district court found that there was, in fact, slowed their removal. And that is contrary to the policy that is — was announced and this court found and noted in Taniguchi that the purpose is to hasten the removal of these aliens. In the defendant's brief, they postulate a possible theory for what Congress was trying to do with 1220 — with 1228B insofar as it was kind of a three-step process to eliminate 212H relief that, in the end, left 212H relief available just for illegal alien aggravated felons. And the government believes that that argument fails for three reasons. The first is that in engaging in a statutory interpretation analysis, it's important to look at the actual intent of Congress, not just the hypothetical intent. And we've been unable to find any actual intent expressed by Congress that this is what they were planning to do. Secondly, in this case, that still doesn't change the fact that for some class of aliens, this amendment actually slowed their removal and doesn't change the fact that this is, in fact, contrary to the policy. And lastly, it doesn't explain why Congress would go out of its way to carve out this narrow group of illegal aliens for — to preserve 212H relief in a very ambiguous way when the more natural reading is that 212 — or that 1228B wipes it out completely as to these individuals, and just like 212H wipes it out as to lawful permanent residents so that that relief is not available to anyone. And that actual result accords with the underlying policy of the provisions. Unless the Court has any further questions about any of the government's other arguments, I'll reserve the time. All right. Thank you. Good morning. May it please the Court. I'm James Laughlin, and I represent the appellee, Louise Hernandez-Bermudez. I think it's significant that when Judge Nelson asked the government to explain why the plain language is ambiguous, the first thing government's counsel did was start talking about the legislative history. That's indicative of what the government's case has been throughout these proceedings, both in the district court and in the briefs here on appeal. And I don't think that's the way that this Court should approach the issue. The most fundamental canon of statutory construction is that Congress's – the best evidence of what Congress intends is the language it chooses for a statute. And therefore, I think the starting point of this Court's analysis should be the language itself. Excuse me. Go ahead and finish your sentence, and I'll ask you a question. That's all right, Your Honor. Okay. 1227A23 says, Correct, Your Honor. 1228C says, I don't think there is, because the government has never challenged that – one of the district court's findings, which is that despite the language of 1228C, the presumption created by that statute is not a rebuttal, which means that if Mr. Hernandez had been placed in traditional deportation proceedings where he was put in front of an immigration judge, he did have plausible grounds for relief under Section 212H of the Immigration and Naturalization Act, which the immigration judge would have been required to inform him of and to give him the opportunity to assert grounds for relief under that. So the government doesn't challenge the argument that despite the language of 1228C, there is no absolute prohibition of – or absolute – I'm sorry. Despite the language of 1228C, a person who is placed in immigration proceedings despite having suffered an aggravated felony does not automatically get deported. There is still the possibility that he can obtain relief from deportation. And therefore, I think that once that is recognized, there is no ambiguity that arises between the relation of that section and the reference in Section 1228B to 1227A28. Because what it does is it says that when a person has to decide whether or not a certain immigrant or a certain alien is eligible to be put into administrative removal proceedings, one of the things it has to do is determine whether or not the person qualifies as being deportable under 1227A283. And therefore, I think that there is no real ambiguity between those two provisions. It just reflects Congress's intent that one of the things the Attorney General has to take into account, one of the qualifications to put somebody in administrative removal proceedings, is that they satisfy the requirements of 1227A283. The other things that the government points to, to demonstrate some sort of internal ambiguity within Section 1228, I believe are easily dismissed. The reference to the section titles, which this Court and the Supreme Court has recognized is not a very good tool of statutory construction. It does not override any language of the text of the statute itself. The parenthetical after the reference to 1227A283, I think, is also just a descriptive parenthetical, not a restrictive one, for the reason I set forth in the brief. If we buy your argument that the statute is unambiguous and we have to apply it by its letter, then you win right off the bat. If we do find it's ambiguous, however, would you agree that the legislative history would not support your reading of the statute, the result that's intended by Congress? No, Your Honor, and I'll explain why. But first I want to address one of the first things you said, which I can see that there is a separate ground on which the government is relying to reach the legislative history, and that is even if the language is not ambiguous, if the plain language results in an absurd result, then that's another way to get to the legislative history. And for the reasons I explained in the brief and that I'll explain later, I don't believe that the plain language interpretation is absurd. And those are basically the same reasons why I think that the legislative history does not conflict with the plain language interpretation. Keep in mind that even if the court goes to the legislative history, the rules of statutory construction say that if you're going to override the plain meaning, you need to find clearly expressed legislative history. And we don't have that here. What the government points to when it talks about legislative history basically is inferences it wants the court to draw from a series of amendments which took place over a period of years. That is not clearly expressed legislative history. That is not a statement on the floor of the Senate or a statement in a committee report saying we're enacting this law because we want this class of aliens to be subject to administrative removal. There's nothing clearly expressed, nothing of that sort that the government can point to. So instead it relies on these series of amendments and tries to basically say that Congress made a mistake. It just didn't appreciate what it was doing when it was making these amendments. Well, isn't it true that it was the intent of Congress to override it to streamline procedures for administrative deportation? That is correct, Your Honor. And as I pointed out in the brief, there's no dispute that Mr. Hernandez was subject to expedited removal proceedings and that the INS could have instituted proceedings that would have easily determined whether or not he was deportable before he ever finished serving his state sentence and then could have taken appropriate action deporting him when that sentence was finished. So there's no conflict with the plain language interpretation that the district court adopted and the intent of Congress to move these cases along quickly. The only issue is what class of people get put into these administrative removal proceedings where the most significant effect is that the person loses the right to assert grounds for relief from deportation even if they have plausible grounds to. Why would we think Congress wanted to include aliens who snuck into the United States but not aliens who were admitted? Why would we think Congress would want to do that? Your Honor, I think the best evidence of that is the Taniguchi case. And I am not sure that that was a constitutional issue, which we don't really have in this case. This is, you know, simply statutory interpretation. Correct, Your Honor. And I appreciate that the analysis the Court was doing in Taniguchi is different from the analysis in retrospect that this Court was doing because the Court was performing a test of a statutory construction. But I do believe that in a case like this where the ultimate question is going to be, is the plain language interpretation of the statute so absurd that the Court should look to legislative history, then I think that the question about whether the interpretation is absurd, in other words, is it rational or irrational, is equivalent to the analysis that the Court was doing in Taniguchi. And therefore, I think that it's very appropriate to look at that case to see whether or not what was, whether it's possible that Congress was doing something here that they had rational reasons for, non-absurd reasons for, that would preclude the Court from taking the step of going to the legislative history. And I think once you've looked at Taniguchi and you look at the reasons that the government advocated for in that case, it's possible reasons why the Congress did what it did. And then the Court's ultimate conclusion that's saying, well, it may have been fairer and it may have been smarter and it may have been more efficacious to do it in another way. We can't say that Congress was irrational in doing it this way. I think the same thing can be said in Congress's decision here to pick language which treats illegally entering non-legal permanent residence in somewhat of a better way than legally entering non-permanent legal residence, even though that might seem absurd on its face. Well, it is absurd on its face, isn't it? Because if you read what happened in 1228b, it seems to be straightforward that you can use these expedited removals for persons who committed aggravated felonies. Do you concede that that's basically what it says? Not all people who have been convicted of aggravated felonies. Which ones are excluded? Well, even the government concedes that legal permanent residents who are convicted of aggravated felonies are not subject to administrative removal. And then our argument is that because of the reference to Section 1227A283 that also appears in Section 1228b, that's another requirement, another limitation on the types of people who can be put in administrative removal. The other thing I think is important for the Court to consider, if it does go to take the step of looking at the legislative history, is that- I followed you there, but for some reason I lost track again. We're talking, though, here about this particular individual was entered illegally. He has no resident status. Is that correct? Correct. And so how do you read him out of that provision then in 12b? If that's what it means, if you are an illegal and you are subject to deportation, as it says in C, presumption of deportability, then you have to go to 1227 to read him out. But it doesn't make any difference. He is an aggravated felon whether you go to 227 or not, or 1127 or not. It's 1227. In other words, it seems to me that maybe what I'm missing here is that once they identify a class of persons in 1228, the conviction of an aggravated felony, why do you have to go to 227? They reference 227 or 1227. But he's an aggravated-he's convicted of aggravated felon. You're saying that then they meant to incorporate 1227, and he had to have been entered legally rather than illegally. See, I'm having a problem with it. If there's no ambiguity, then I've got the ambiguity problem. Your Honor, let me try to answer your question, and I'm not sure that I understand it. So if it sounds like I'm not addressing what you want me to address, please interrupt me. No, I'm confused on this because I understand what you're saying, but for me to track your thoughts, maybe you can help me on that. Let me start by starting at the beginning of Section 1228. 1228A provides that anybody convicted of an aggravated felony is subject to expedited removal. And even though it actually covers other people convicted, not convicted of aggravated felonies, but convicted of other crimes that aren't defined as aggravated felonies. So we start with that premise, that anybody convicted of an aggravated felony is subject to expedited removal. In Section A, it says somebody, these types of people, people who have suffered an aggravated felony, are subject to one of two types of deportation proceedings. Either the traditional deportation proceedings under Section 1229 sub A or little a, or the administrative removal proceedings in subsection B of 1228B. So Mr. Hernandez does not contest that he's subject to expedited removal as an aggravated felon under Section 1228A. The issue then becomes what type of proceedings was he entitled to before they actually entered a removal order against him. And for that, you have to look to 1228B. And there's where there's the reference to Section 1227A2A3. But it's prefaced by aliens who are not permanent residents. And so you've eliminated that class. And so now you've got the illegal types because they're not permanent residents. Doesn't that separate it out from Part A? Well, I mean, I agree that the first parenthetical in subsection B that refers to paragraph 2, that says, okay, if you're a legal permanent resident, then this doesn't apply to you. Don't go any further. Okay? Mr. Hernandez doesn't fall into that category because he's not a legal permanent resident. So you keep going, reading through Section B. Then you hit the next requirement. Determine the deportability of such alien under Section 1227A2A3. And my argument is, and the interpretation that was adopted by the district court, was that that provides that's Congress saying that there's a separate requirement after you determine whether somebody's a legal permanent resident or not. Even if they're not a legal permanent resident, you then go to the next step to determine whether they're deportable under 1227A283. If they aren't, you don't go any further. If they are, then you go further. I follow you. Okay. Again, the one thing I would like the Court to look at closely, if it does decide to go ahead and look at legislative history, is the fact that the legislative history is not as simple as the government makes it out to be. The government says that all this arises because it was a global search and replace of a single term, and Congress didn't intend that result in 1996, and that's where we're at now. But there's a lot more going on in 1996. The government does not contest the fact that Mr. Hernandez, if he had been, if his deportation proceedings began in, let's say, 1995, he would not have been subject to administrative removal. Granted, a lot of illegal aliens at that time were subject to administrative removal because the language in Section B was different. But at that time, Section B also included a provision which said that it does not apply to people who are eligible for discretionary relief under this title. Therefore, when Congress made these changes to the statutes in 1996, it didn't just change the term from admission to entry and causes what the government sees as a problem now. It also took out that provision, which said that the section doesn't apply to people who are eligible for discretionary relief. And therefore, it's very possible that Congress intended to allow people like Mr. Hernandez, who were entitled to a full hearing and to get discretionary relief pre-'96, to continue to allow them to get relief after 1996. How do we make that leap of deduction? It seems like the legislation is going completely the opposite direction. Why would you loosen up as to those people? They were tightening all these restrictions up. And in this case, the person who came in illegally gets a better result than the person who was here as a lawful resident. I mean, under that analysis, isn't that right? The person here under lawful residence doesn't get discretionary relief. The person who comes in here illegally gets discretionary relief under your analysis of what they may have thought they were doing. And how does that fit in? Maybe I'm missing something again. Well, again, Your Honor, I'd like to start with the basic premise that that's why the court shouldn't start getting into legislative history and trying to figure out, well, maybe Congress intended this, maybe Congress intended that. I think the language Congress chose is the best evidence for what Congress intended. They intended to give the lawful resident a better, a worse deal than the illegal entry. Yes, Your Honor, and I would say that for the same reasons that this Court acknowledged in Taniguchi, they may have made the determination to allow non-legal permanent residents more rights than legal permanent residents. I guess the question would be why would Congress do that, given what they had been doing up to then? They weren't giving anybody more rights to speak of, and then all of a sudden they pick out the illegal entrance and say, you get more, but the people who entered and stayed legally, you get less. So why would they do that? Your Honor, I disagree with that to some extent because I think it kind of follows what the government is trying to propose, which is kind of oversimplifying what was going on in 1996. As I said, Mr. Hernandez is an illegal alien. Somebody in his equivalent position in 1995 was not subject to administrative removal, whereas other illegal aliens were subject to administrative removal. So what happened in 1996 is not just a matter of Congress saying, there's these people who have these rights, and we're going to narrow it and take them away. What happened in 1996 was some people made out better, some people made out worse. And I think that once you look at it as being not so simple as the government wants it to be, that it's a complex determination by Congress as to, well, who should we continue to allow to assert plausible grounds for equitable relief from deportation, and who should we not give that right to, then it becomes harder to draw the inferences that the government wants to draw from these series of amendments. But what's rational about your view of what Congress did to extend more rights to legal entrance than legal entrance? I mean, what was Congress thinking about as you see it? Well, Your Honor, I mean, I think you can look to Taniguchi, and there where they said that non-LPRs enjoy rights and privileges not shared by illegal aliens, and therefore they should be held to a higher standard of responsibility. That would also apply to- As a constitutional analysis. But here they're trying to decide who gets what rights on deportation. And so that same argument doesn't carry over, because why do we expect more from the illegal entrant at that point than we do the legal entrant? We would throw the legal entrant out and let the illegal entrant have more rights. Well, Your Honor, I guess I disagree with it, that the analysis of Taniguchi doesn't apply. And I'd like to explain why if I may have a moment. Go ahead. Like I said, the Court should not answer the government's invitation to just start off right at the bat looking at the legislative history and trying to figure out what Congress wanted to do. It should start first looking at the language. And I think that the language is plain. There is no ambiguity there. So the only way the Court ends up looking at the legislative history is to find out whether the plain language is absurd. And in that respect, I think that it's appropriate to look at Taniguchi, where the question was, granted, it wasn't a statutory construction issue, but a rational basis issue. And if there are rational reasons for acting in a certain way- That's my question. What are they? I would say that they're the same that were listed in the Taniguchi case, that once you give somebody some rights, like legal permanent residence or legally entering non-legal permanent residence, and they commit an aggravated felony, then they should be held to a higher standard. And there's a reason to treat them more harshly than people who enter the country illegally. Again, I recognize, as the Court did in Taniguchi, that it may not have been the smartest thing to do. There may have been better ways to approach it. It may have been more efficacious to approach it in a different manner. But it's not irrational. And so by the same token, it's not absurd for Congress to have done this. And if it's not absurd, the Court shouldn't go any farther than that. Can I ask you to just clarify one thing for me? Can you, in 25 words or less, explain the difference between administrative removal and expedited removal? Yes, Your Honor. I don't know if I can do it in 25 words or less, though. Expedited removal means that it's just the process by which the deportation proceedings begin while somebody is already in prison, with the hopes that the whole process is resolved by the time they finish their sentence, so that when the sentence is over, they can either be deported, if that's what the determination was. Those proceedings can either be traditional proceedings where an immigration law judge goes in and sits in the prison, and they have the full hearing with the judge and everything like that, or administrative removal, where it's done without a judge, and it's done like it was in this case. And you can see the paperwork in the excerpt of record, where basically an INS officer goes in, gives this paperwork to the inmate, who then can check off boxes as to asserting certain rights or whatnot. And then the officer himself, or I believe another officer, makes the final determination as to deportability. Gotcha. Thank you. All right. Thank you. Counsel, listening to this last argument, it threw me into a dilemma that you may run me out of. Taniguchi was decided by our Court in 2002. The Brazen-Bazen-Reyes case, which is the Seventh Circuit case, which hasn't been discussed yet, goes the other way relative to the intent of Congress in treating these legals and illegals in different ways. So I would take it, then, that we must have some tension, then, between his argument in Taniguchi and the other circuits in Bazen-Reyes, because they're completely opposite, as far as I can see, in their holding. I think I may be able to harmonize them, Your Honor. Okay. In Taniguchi, the Court held that notice that Congress's expressed intent for both of these acts was to expedite the removal of criminal aliens. And because it was an equal protection analysis, this Court said, is there any possible reason that Congress would want to treat lawful permanent resident aggravated felons worse? And this Court hypothesized there, in fact, might have been, because they had been extended greater privileges and, therefore, should be held to a higher standard. This case, Bazen-Reyes basically looks at, again, it was a statutory construction case looking at what Congress actually intended. And in that respect, what the Court did was it looked at the fact that, you know, it rejected the argument that illegal aliens should be categorically exempt from 1228B. And this is another reason why Taniguchi is not a good fit as an analogy to this case, because in this situation, if the rationale of Taniguchi is, it's okay to treat people who have been accorded greater rights, less process upon deportation. You're assuming that that's what Taniguchi stands for. The fit of 1228 doesn't match, because LPRs receive the fuller process of 1228A. Illegal aliens under the district court's reading receive this fuller process under 1228B because they're exempt. But that small category or the category of lawfully admitted non-lawful permanent residents don't get fuller process. So it's not the case that the more process you got initially, the harsher we can treat you, because if that were the case, LPRs and non-LPRs who were lawfully admitted would be treated harshly the same way. But here, lawful permanent residents get full process. Illegal aliens get full process. And this small group doesn't. It seems to make far more sense and is more consistent with Congress's expressed intent that lawful permanent residents receive fuller process and that non-lawful, whether they're illegal or legally entered the country, get less process in terms of being deported. And so I think that's how they can be reconciled, because the groups that are carved up by Taniguchi are different from the groups that are carved up in this case. There's the government's chart, I think, on page 37 or 38 of its brief. Well, that's a skitzy proposition, because they don't change color. They're both the same colors. They both have their own attributes, and yet for different purposes, resulting in the same treatment in the sense that they get different treatment on removal. We just say, well, you're this kind and you're conditioned because of you have more rights. It's just very difficult for me to reconcile those two. Well, the thing that's the thing to keep in mind as well is the Second Circuit noticed in the Jankowski decision and that this Court did not, for whatever reason it wasn't briefed or was simply assumed, that there was, in fact, a difference in treatment between LPRs and non-LPRs under 212H. This Court noted that 212H itself was amended by Congress to eliminate the – to eliminate relief for LPRs itself. If you read 1228B, if the government urges, 1228B says if you're a non-lawful permanent resident aggravated felon, you're placed in administrative removal. Under 1228B-5, you're not entitled to any discretionary relief. So you are foreclosed from 212H relief under 1228B if you're a non-lawful permanent resident. You're foreclosed from 212H relief if you're a lawful permanent resident by 212H itself. And so in that respect, Congress can be – they can be harmonized as Congress saying, okay, we're going to get rid of 212H for all aggravated felons, but they just did it in two different places. Yeah, because that's the point, because it's 212H relief here that's the big deal. And so if you can eliminate both people, then this difference doesn't really make any difference to how you classify them or get there, I guess. Right. And that's part of the reason – part of the analysis the Second Circuit engaged in in its Jankowski decision. Well, we'd have to – in an opinion or then we'd have to do some rationalization too then to deal with Baz and Rays. Well, I mean, again, I mean, how do you mean rationalization? I want to make – Well, I mean, it's been cited to us. I suppose we have to say exactly as you said, that just because they decided under that basis doesn't preclude us by our decision in Taganucci to come up with the same ultimate result. Because we're going to come up with the same ultimate result if we do that. Same ultimate result of – Yeah, the one that you're urging, if we do that. Yeah, I think that, you know, again, that's why this Court is urging that, you know, Taniguchi does not stand in the way of reaching a decision that harmonizes with the Second Circuit's decision. Maybe my perception of tension here is just overrated, but it would seem to me in writing something with those things hanging out that it's somehow that – I agree. There is some tension because Taniguchi did not discuss how 1228B – That's right. But again, this is an issue that seemed to be assumed by the parties in the Court and therefore isn't, you know, at least binding precedent on this panel in looking at the Fuller issue in this particular context. I wanted to just clarify a few issues raised by the defendant in his argument in my remaining time. The first is that the plain language is, in fact, ambiguous. The presumption of deportability does, in fact, create tension with the reading that the district court has urged. And this is the following reason. While there is this presumption of deportability, as I tried to explain before, there's two parts to it. Whether or not you're deportable in the first instance and whether you're eligible for discretionary release, the government does not dispute that if you're deported under 1228A, you're still subject to the presumption of deportability, but you may still seek relief, discretionary relief under 1228C. However, if you're subject to administrative removal under 1228B, the presumption applies again, but because of 1228B-5, you are not eligible for any sort of relief. So there really isn't any tension between the fact that you may still be able to receive discretionary relief even if you're subject to the presumption if you're deported under the 1228A. Because those, for that class of lawful permanent resident aggravated felons, they can still receive it. It doesn't change the fact that if you're subject to that presumption, that presumption applies. It means that once you've committed an aggravated felony, you are deportable. And for those people who are subject to administrative review and can't seek discretionary relief, that ends the inquiry for them. And there is, in this case, clearly expressed legislative history to indicate that Congress meant to deport illegal or meant to hasten the deportation of criminal aliens. Well, that 1228B-5 is very significant because it cuts off all relief from removal. That's correct. And so the only way to get out of that is to try to drag the 1227A to AAA back up to push them back up in Stage 1. It almost eliminates the result that they wanted in 1228B-1. That's why the government argues that this is inconsistent with the express legislative history. That's the way you'd rationalize how we straighten out. Yes. And when Congress made these amendments to 1228, if I could just have 15 more seconds, to eliminate the loophole for aliens who were eligible for discretionary relief and adding D-5, this is all part of AEDPA's Section 442. And on page 25, you notice that the House report there said that all of the amendments to 442 were designed to, quote, The case just argued will be submitted.
judges: Brunetti, T.G. Nelson, Silverman